Filed
MAY 0 1 2000
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

330

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| IN RE McKESSON HBOC, INC. SECURITIES LITIGATION | MASTER FILE NO. C-99-20743-RMW AND ALL RELATED ACTIONS<br><br>**ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS** |
|---|---|
| **This Document Relates To All Actions** | [Ruling on Docket No. 283 and Striking Docket Nos. 292, 293, and 294] |

The request of lead plaintiff to prohibit and remedy certain solicitation practices was heard by the court on March 31, 2000. The court has read the moving and responding papers and heard the argument of counsel.[1] For the reasons set forth below, the court enters an order regulating certain solicitation practices and remedying the effects of solicitations already sent to class members. The court also strikes three expert declarations proffered by the Much Shelist firm.

## I. BACKGROUND

This is a putative securities class action alleging massive market losses based on revelations by defendant McKesson HBOC, Inc. that HBOC, one of its predecessor corporations, improperly

---

[1] The motion for relief was originally filed as an *ex parte* application. The court determined that the matter merited full briefing and argument, and set the hearing for March 31. The court rejected a subsequent request by lead plaintiff to authorize discovery and continue the March 31 hearing date.

1

recognized some 40 million dollars in revenues.

**A. GENERAL BACKGROUND**

In November 1999, the court consolidated 53 class action complaints relating to the alleged accounting fraud at HBOC. In consolidating the class actions, the court expressly rejected the argument of numerous plaintiffs' attorneys that speculations about purported conflicts among class members militated against consolidation. In particular, the court declined to maintain separate actions for open-market (as opposed to exchange) purchasers or McKesson (as opposed to HBOC) shareholders. While recognizing that the possibility of conflict among class members might ultimately require appropriate steps at the class certification stage, the court held that such concerns were not implicated in the initial consolidation determination, which focused largely on the predominance of common questions of law and fact.

At the end of December 1999, the court appointed the New York State Common Retirement Fund as lead plaintiff in the consolidated class actions, based on its claimed damages of more than 50 million dollars, stemming from open-market and exchange purchases of both McKesson and HBOC stock. The court also approved lead plaintiff's selection of the Bernstein Litowitz and Barrack Rodos firms as lead counsel.

Meanwhile, two firms whose lead counsel bids had been rejected by the court initiated a solicitation campaign to recruit individual McKesson shareholders to assert non-class claims based on Section 14(a) of the Securities Act. This advertising campaign is the subject of the instant motion.

**B. THE SOLICITATIONS**

The solicitations in question were made jointly by the law firms of Milberg Weiss Bershad Hynes & Lerach LLP (Milberg Weiss) and Much Shelist Freed Denenberg Ament & Rubenstein, P.C. (Much Shelist).

The joint solicitations consisted of a massive mailing campaign and pages on the firms' World Wide Web sites. The solicitations are directed at persons who held McKesson shares in the

fall of 1998, when McKesson management issued an allegedly false proxy statement endorsing a merger with HBOC. According to the solicitations, the court's previous consolidation order denied separate representation to such shareholders, who, the solicitations represented, had the most valuable claims against McKesson. The solicitations further argued that the court had "diluted" these claims by lumping them together with HBOC claims. The solicitations made no reference to the fact that lead plaintiff claims that it held more than 500,000 such "proxy" shares, in addition to various other holdings. Indeed, they made no reference whatsoever to the court's selection of a lead plaintiff or lead counsel.

The mailed solicitations, which were captioned "Notice of Opportunity to Join McKesson HBOC/Proxy/Breach of Fiduciary Duty Litigations" were distributed through a national mailing company to a number of brokers with instructions to "promptly forward" the "important shareholder notice" to persons who held McKesson stock on November 27, 1998. Only at the end does the mass mailing reveal: "This letter constitutes Attorney Solicitation/Advertising." The solicitation requested a reply by February 10, 2000, with no explanation of the importance of that date. (As far as the court is aware, the date was an arbitrary deadline.)

Enclosed with the mailing (and also available on various Internet web pages) were a one-page "Authorization To File McKesson HBOC Acquisition Claim" and a three-page "McKesson Master Retention Agreement," incorporated by reference into the one-page Authorization. The three-page Master Retention Agreement (but not the one-page "Authorization" that the client signs) informs the client that he or she is:

- agreeing "to abide by the decisions of the Steering Committee," a body appointed by the attorneys, which will consist of an unspecified number of other shareholder clients;

- authorizing his or her attorneys to "opt the Client out of any class action proceeding relating to the claims authorized herein"; and

- agreeing to pay costs to the attorneys out of any recovery obtained even if he or she terminates the representation for any reason.

There is no evidence as to the number of clients that Milberg Weiss and Much Shelist recruited through their marketing campaign.

Lead plaintiff has now moved to enjoin such solicitations, and to prohibit any contact by the soliciting attorneys with putative class members. In response, Milberg Weiss agreed to cease its solicitation efforts, leaving only the Much Shelist firm to defend against this motion for injunctive relief.[2]

## II. LEGAL STANDARD

Rule 23(d) of the Federal Rules of Civil Procedure gives the court broad powers to make "appropriate orders" to ensure efficient and fair proceedings in a class action. Specifically, the court is authorized to enter orders

> (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action;
> (3) imposing conditions on the representative parties or on intervenors
> . . .
> (5) dealing with similar procedural matters.

Fed. R. Civ. P. 23(d). The court's Rule 23(d) powers include the authority to enjoin communications with class members to protect them from undue interference. See Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981). However, such an order must be based "on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101. Any such order must also be "carefully drawn . . . [to] limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." Id. at 102. An injunction restricting communications must be "the narrowest possible relief which would protect the respective parties." Id. (quoting with approval Coles v. Marsh, 560 F.2d 186, 189 (3d Cir. 1977)).

---

2. In fact, Milberg Weiss wrote a letter to the solicited clients who retained the firm, advising them that it was satisfied that lead plaintiff "will vigorously represent class members with (Section 14 claims) in the class action litigation," and releasing them from any obligations to the Milberg Weiss firm."

4
ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS
MASTER FILE NO. C-99-20743-RMW
CTS

# III. ANALYSIS

Lead plaintiff advances three main arguments for enjoining future communications by the Much Shelist firm: (1) that the Much Shelist firm is subverting the Private Securities Litigation Reform Act of 1995, as well as Rule 23 of the Federal Rules of Civil Procedure, by actively encouraging a plethora of non-class claims prior to class certification; (2) that the Much Shelist solicitations were unethically deceptive and misleading; and (3) that the Much Shelist firm's communications with putative class members are unethical, because those members are already "represented" by lead counsel. The court addresses these arguments in turn, and then addresses the propriety of granting the relief requested.

## A. THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND RULE 23

Lead plaintiff notes that the Private Securities Litigation Reform Act of 1995 (the Reform Act) sets forth a procedure for the rapid consolidation of securities class actions, and attempts to do so in a manner that discourages attorney-driven litigation. The court agrees with this characterization of the Reform Act, and shares lead plaintiff's concern that mass solicitations of individual claims promote premature fragmentation of an efficient class-action process.

One of the principal goals of the Reform Act's litigation provisions is to prevent lawyers from fomenting unnecessary and duplicative litigation. As this court noted in its November 2, 1999 consolidation order, a particular evil of past securities litigation was the control that plaintiff's counsel exercised over large aggregated masses of clients, who minimally supervised their lawyers through unwieldy steering committees. See Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1152-53 (N.D. Cal. 1999). Unfortunately, the solicitation documents in the record appear to contemplate precisely such a scheme.[3]

Even without the strong policy favoring efficient consolidation of actions that underlies the Reform Act, Rule 23 provides additional grounds for concerns about the current solicitation campaign.

---

3. Moreover, as defendant McKesson HBOC argues, it is disingenuous for the Much Shelist firm to characterize the lawsuits it contemplates filing as "individual" actions when they will be aggregated into a committee-governed structure that has all the trappings of a putative subclass and with the steering committee selected by counsel from the individual plaintiffs.

5

ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS
MASTER FILE NO. C-99-20743-RMW
CTS

First, Rule 23 regulates the use of "notices" to class members in several places, providing for court supervision as appropriate. See Fed. R. Civ. P. 23(c)(2) and 23(d)(2). The Advisory Committee notes state: "Notice is available fundamentally 'for the protection of the members of the class or otherwise for the fair conduct of the action' and should not be used merely as a device for the undesirable solicitation of claims." The shareholder "notices" sent out by the Milberg Weiss and Much Shelist firms, which were sent through the usual distribution channels for official court notices in securities class actions, are potentially misleading, inasmuch as use of the word "notice" and of those distribution channels suggested that the notices were somehow required (or at least authorized) by the court. (While the letter to class members did conclude with a disclaimer that it was attorney advertising, the cover letter requesting brokers to forward it to their clients did not make this clear.)

Second, Rule 23 contemplates that putative class members will make an informed decision about their decision to opt out of a class. The court has a duty to ensure that all putative class members have a genuine choice whether or not "to intervene and present claims or defenses, or otherwise come into the action." Fed. R. Civ. P. 23(d)(2). There is no meaningful opportunity to choose when a concerted multimedia effort is made to secure opt-out authorizations before any class is certified.

There are, of course, countervailing Rule 23 concerns, which Much Shelist raises in its papers. Prime among these is the concern that absent class members should not be forced into a class against their will. This concern has a constitutional dimension as well. See, e.g., Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999) (disapproving use of compulsory "limited fund" class-action device in asbestos cases).

While the court does not mean to minimize these concerns, the question of pressing absent parties into a class action is not yet before the court. That question may be presented when a class is certified, but there are a number of factors that class members are entitled to know before deciding whether or not to opt out of any class. These factors include: (1) whether the court has appointed one large class for all shareholders or subclasses for certain categories of shareholders; (2) whether their losses are large enough that they would want separate representation, even if the short-term costs are higher; and (3) the amount of a proposed settlement, if any.

Thus, the court finds that the policies of the Reform Act and Rule 23 are best served by limiting solicitations that are distributed in the same manner as official court-ordered notices and that induce class members to provide authorizations to opt out of the class without a clear understanding of the costs and benefits of class membership. Moreover, there is no harm caused by delaying the opt-out decision until more complete information is available. The statute of limitations for absent class members is tolled during the pendency of a putative class action. See Crown, Cork and Seal Co., Inc. v. Parker, 462 U.S. 345, 353-54 (1983); American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 550-51 (1974). If class members wish to opt out a later time, that option will be just as available to them then as it is now. See Impervious Paint v. Ashland Oil, 508 F. Supp. 720, 724 (W.D. Ky.), appeal dismissed, 659 F.2d 1081 (6th Cir. 1981) ("if these class members did in fact make a free and unfettered decision in choosing to withdraw [from the class], they will do so again.").

There may be circumstances in which putative class members would seek separate representation and enter into agreements with their attorneys that give the attorneys authorization to opt out of a class. However, when the agreements are solicited by mass mailings and over the Internet, and when retaining separate counsel is as easy as pressing a "Click Here" button on a web page, the prospects for abuse are simply too great. This is particularly true when the agreement—such as this one—is made on a contingency fee basis and without the benefit of an understanding of the class action process and the court's supervision of fees. Locking putative class members into such representations would needlessly multiply this litigation and severely disrupt the effectiveness of the class-action device.

**B.    ALLEGEDLY MISLEADING AND DECEPTIVE STATEMENTS**

Not only are the communications from the Much Shelist firm unnecessarily disruptive to the class action process, but they are also misleading, although not to the extent alleged by lead plaintiff.

In some cases, the alleged misrepresentations are not deceptive and may even be constitutionally protected statements of opinion. For instance, it is not unethical for Much Shelist to express an unfavorable opinion of the court's consolidation order. Much Shelist was not obliged to provide a glowing reference to the New York State Common Retirement Fund's track record as a

7

ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS
MASTER FILE NO. C-99-20743-RMW
CTS

lead plaintiff. It was also appropriate for Much Shelist not to compare its 25% contingency fee proposal to the fee agreement negotiated between lead plaintiff and lead counsel; lead counsel's fee agreement is not a matter of public record, making any such comparison difficult to make, and possibly improper.

Others of the alleged deceptions are troubling.[4] The following particularly disturb the court:

– The solicitations were labeled as "notices." This concerns the court, because the word "notice," particularly in the class-action context, has an official meaning. Attorneys have a special obligation not to disguise their advertisements as official-sounding notices; after all, even an attorney thinks twice before throwing away an envelope from a law firm. See Standards of the State Bar of California Pursuant to Cal. R. Prof. Conduct 1-400(E), Standard 5 (presuming advertisement to be improper if not clearly marked "Advertisement"); cf. Standard 6 (presuming improper any advertisement that implies a relationship between a private attorney and any governmental agency).

- The solicitations do not identify the court-appointed lead plaintiff and counsel or the procedures safeguarding the appropriateness of class certification. See Cal. R. Prof. Conduct 1-400(D)(3) (requiring full disclosure of material facts).

- The solicitations provide an inadequate disclosure of the comparative costs and benefits of participating in a class action. There is no indication that participating in a class action may (or may not) be more economical, both in terms of time and money.[5] For instance, there is no disclosure that fees in a class action are subject to court approval. There is no advice that individual plaintiffs may be subject to the discovery requirements of the Federal Rules of Civil Procedure. See id.

- The solicitations communicate a gratuitous air of urgency, both by failing to provide any information regarding the timetable for a class action (including the fact that the statute of limitations is tolled during the pendency of a putative class action), and by directing prospective claimants to meet an arbitrary deadline for submitting their attorney retention agreements. See Cal.

---

4. The parties and the Much Shelist firm are unanimous that the issue of deception in attorney solicitations is a question of law, and that further discovery on this issue is unnecessary.

5. The court also notes that the solicitations fail to advise that even "individual" actions may be related and consolidated with the class action, which may reduce the appeal of pursuing an individual action.

8

ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS
MASTER FILE NO. C-99-20743-RMW
CTS

R. Prof. Conduct 1-400(D)(2) (prohibiting attorney advertisements that "confuse, deceive, or mislead the public")..

The court therefore concludes that the solicitation materials were misleading, if not intentionally deceptive. Any client who retained Much Shelist on the basis of these materials did so without the benefit of adequate information. As discussed below, the court believes that such a finding compels an order giving solicited Much Shelist clients the option of rescinding any retention agreement.[6]

C.  **COMMUNICATIONS WITH POTENTIAL CLASS MEMBERS**

Lead plaintiff argues that Much Shelist should be banned from communicating with putative class members because they have an attorney-client relationship with lead counsel, and are therefore "represented" parties under applicable ethics rules.

The court is not persuaded, although the court has found no case that squarely presents a situation such as exists here. The leading California case makes clear that putative class members are not "represented" and that attorneys may contact them. See Atari v. Superior Court, 166 Cal. App. 3d 867 (1985). Lead plaintiff does not meaningfully distinguish that case. Moreover, this is not a case where an adverse party is attempting to harass or confuse absent class members. See, e.g. In re School Asbestos Litig., 842 F.2d 671, 682 n.23 (3d Cir. 1988) (condemning defendants' efforts to influence class members through improper communications); Erhardt v. Prudential Group, Inc., 629 F.2d 843, 845 (2d Cir. 1980) (same). Rather, this is a case where an outside attorney is arguably trying to <u>assist</u> class members with the prosecution of their individual claims.

Finally, the fact that lead counsel may already owe some general fiduciary duties to unnamed putative class members does not seem dispositive. While lead counsel owes a generalized duty to unnamed class members, the existence of such a fiduciary duty does not create an inviolate attorney-client relationship with each and every member of the putative class. Taken to an extreme, lead plaintiff's logic suggests that putative class members are forever walled off from any effort at solicitation, a proposition that seems unsupportable.

---

6. The court distinguishes between solicited clients and those clients (if any) who on their own initiative retained Much Shelist prior to its solicitation campaign.

9

ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS
MASTER FILE NO. C-99-20743-RMW
CTS

Thus, while the court concludes that the communications in question were improperly disruptive and misleading, they were not unethical as communications with represented parties.

**D.  APPROPRIATE REMEDY**

As noted above, the court finds that the Much Shelist solicitations are disruptive of the orderly class action process and do little to advance the rights of individual class members at this juncture in the litigation. The court is particularly troubled by the distribution of a "notice" not authorized by the court and by the assembly-line pre-authorization of class "opt outs." Moreover, the solicitations inadequately disclosed the risks inherent in pursuing a remedy as an individual, rather than as a class member, including the possibility of higher attorneys' fees and being subject to discovery. There is no identification of lead counsel or information about the court's supervision of a class action, particularly, its control of the certification process and payment of fees to counsel.

In light of these findings, the court believes it is necessary both (1) to remedy any misleading statements that have already been made; and (2) to prevent any repetition of such conduct.

Turning to the remedy for what has already happened, the court believes that it is necessary to provide curative notice to solicited class members, so that they are not confused about the nature of the notice that they received from the soliciting attorneys. The notice should be particularly careful to describe the process for certification of a class and the right to opt out. The notice should also provide that any plaintiff who retained Much Shelist on the basis of the mass solicitation may void his or her retention agreement. This is necessary to protect the rights of Much Shelist clients who were unwittingly led to believe that they must be represented by Much Shelist to preserve their claims against McKesson. The court sees no other way to avoid irreparable harm to those putative class members.

The court will also require Much Shelist to make certain disclosures in any future advertisements. Advertisements must be prominently marked as such. There must be no confusion with court-authorized notices. There must be up-front disclosure of the status of the class action and the class certification procedure.

Finally, the court believes that it is necessary to prevent the mass opting out of a class that has not yet been certified. The court therefore makes known its intention to allow recission of any

10

solicited attorney/client agreement that purports to opt out the client before certification.

The court holds that this approach, requiring full disclosure and ensuring that plaintiffs are not "opting out" of the class by rote, is much more narrowly drawn than the absolute solicitation prohibition requested by lead plaintiff. Nor does the court's approach require Much Shelist to, in effect, advertise the services of lead counsel, as lead plaintiff appears to advocate. Such an approach complies with the First Amendment, and is appropriate under the Gulf Oil standard articulated by the Supreme Court. See 452 U.S. at 102 (requiring "carefully drawn" order balancing interests of regulated speaker and interests of class members); see also Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 651 (1985) (holding in attorney advertising case that "disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech"). Importantly, the approach that court adopts today does not impair putative class members' right to retain individual counsel; they may do so, but only if they have the information necessary to make a fully informed decision.

E. **EXPERT DECLARATIONS**

The Much Shelist firm has submitted three declarations from law professors opining on the ethical propriety of the various solicitation tactics that the firm employed, a purely legal question. These declarations offer few facts or any admissible expert opinions, instead proffering various and sundry conclusions of law. The Ninth Circuit has held that expert affidavits on questions of law are improper, and that they should be stricken. See, e.g., F. Co. v. Pan Ocean Shipping Co., 23 F.3d 1498, 1507 n.6 (9th Cir. 1994) (striking expert affidavit that offered opinion on question of law as "impermissible," even though it was "written in the form of a legal document, complete with subdivisions for discussion of the issues, the law, and the conclusions."); accord United States v. Unruh, 855 F.2d 1363, 1376 (9th Cir. 1988) (condemning "the practice of attempting to introduce law as evidence.") Accordingly, the court will strike the declarations of Professors Simon, Hazard, and Johnson.[7]

---

7. The court notes that all three professors are respected scholars, and that their participation as amici curiae (or even as advocates for the Much Shelist firm) might have been appropriate. The court has made its position on legal "expert" declarations far too clear, however, to allow such

11

## IV. ORDER

The court hereby enters the following order:

1) Lead plaintiff is entitled to distribute a curative notice and a notice of the right to rescind any retention agreement to all recipients of the Much Shelist solicitations. The notice should be fair, accurate, and consistent with this order. The printing and mailing costs of the curative notice shall be borne by the Much Shelist firm. The notice may indicate that it has been authorized by the court.

2) Lead plaintiff is directed to submit a draft to the court for review before it is distributed. The Much Shelist firm may file a response of not more than ten (10) pages one week after the draft is submitted to the court. Lead plaintiff will have one week thereafter to respond.

3) The court hereby enjoins further solicitation by Much Shelist, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice this order by personal service or otherwise from engaging in further solicitation that fails to address the concerns expressed in this order. Specifically, Much Shelist is precluded from

    (a) attempting to obtain any pre-certification opt out authorization;

    (b) failing to include a prominent designation that any solicitation is an "Attorney Advertisement - Not An Official Notice - No Obligation To Respond";

    (c) failing to advise recipients that they are under no obligation to act until the court has certified a class, and that they may consult an attorney of their choice before contacting the soliciting firm;

    (d) failing to include a notice that "The federal court hearing the McKesson cases has issued an order regulating attorney advertisements directed at potential class members. The complete text

---

submissions to play any role in these proceedings. See Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1158 n.13 (N.D. Cal. 1999) (characterizing law professor's declaration submitted in support of lead plaintiff motion as an unauthorized amicus curiae brief).

Copy of order mailed on 5/2/00 to:

Leonard Barrack
Barrack Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

Max W. Berger
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019

    Counsel for lead plaintiffs

James E. Lyons
Skadden, Arps, Slate, Meagher & Flom LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111

Michael J. Shepard
Heller Ehrman White & McAuliffe
333 Bush Street
San Francisco, CA 94104-2878

    Counsel for defendants

Michael J. Freed
Carol V. Gilden
Much Shelist Freed Denenberg Ament & Rubenstein, PC
200 North LaSalle Street, Suite 2100
Chicago, IL 60601-1095

14
ORDER REGULATING CERTAIN SOLICITATION PRACTICES AND STRIKING DECLARATIONS
MASTER FILE NO. C-99-20743-RMW
CTS

of the order can be found at http://securities.stanford.edu/ ...," with a direct link to the page containing an HTML version of this order;

(e) implying that the court has authorized the solicitation;

(f) failing to provide the full caption of the case including its case number and the court in which it is proceeding, as well as the name, address, and phone number of lead counsel; and

(g) failing to provide basic information about the class action process and the potential discovery responsibilities of plaintiffs in an individual action.

4) The foregoing order does not enjoin any expression of an opinion, negative or otherwise, about any order of this court or any action of any litigant (or its counsel) in this case.

5) The proffered expert declarations [Docket Numbers 292, 293, and 294] are stricken from the record.

DATED: 5/1/2000

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge