**E-filed on:** 3/6/2009

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re McKESSON HBOC, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Master File No. C-99-20743 RMW and Related Cases<br><br>ORDER REGARDING FURTHER DISTRIBUTION OF THE NET SETTLEMENT FUNDS<br><br>**[Re Docket Nos. 1745, 1762]** |

Lead Plaintiff New York State Common Retirement Fund ("Lead Plaintiff") entered into three settlements on behalf of the class. It first settled for $960 million with McKesson HBOC, Inc. and HBO & Company with final court approval on February 24, 2006. It then settled with Arthur Andersen LLP for $72.5 million, and the court granted its final approval to this settlement on April 13, 2007. Finally, Lead Plaintiff settled with Bear, Stearns & Co., Inc. for $10 million, and the court gave its final approval to this settlement on January 11, 2008. With this final settlement, the court also authorized a partial distribution of the over $1 billion in settlement funds to the members of the class. Lead Plaintiff now moves for distribution of the remainder of the settlement funds. It submits a number of determinations made by the claims administrator (Analytics, Inc.) for which the adversely affected claimants request court review.

1     The court has also received briefing from two others seeking the court's review of aspects of
2 the distribution. Bank of America, N.A., acting through U.S. Trust, Bank of America Private
3 Wealth Management is the independent fiduciary for the McKesson Corporation Profit-Sharing Plan
4 and objects to Analytics' rejection of a portion of the Plan's claim on the settlement fund. The Plan
5 opposes the motion for distribution on this basis. The court has also received briefing from Larry
6 Greco, a former employee of McKesson whose claim was rejected based on the definition of the
7 settlement classes. Over the past year, the court has received a number of letters from former
8 McKesson employees situated similarly to Mr. Greco.

9     The court has reviewed the papers and considered the arguments of counsel. For the
10 following reasons, the court requests further information and will authorize appropriate distribution
11 after receipt of that information.

## I.  THE DEFINITION OF THE SETTLEMENT CLASSES

13     All three settlement classes carved out certain shareholders whose positions could have
14 potentially scuttled the certification of a class. One such carve-out for was "officers" of the
15 defendants has been the cause of controversy. All three settlements exclude from the class any
16 "officer of McKesson or HBOC" and each defined an officer as "any person employed by HBOC or
17 McKesson who held a position at or above the level of assistant vice president." The settlements
18 also defined HBOC and McKesson to include their affiliates and subsidiaries.

19     In approving the settlement between the class and the McKesson entities, the court has
20 already overruled objections from employees, including Mr. Greco, contending that the definition of
21 "officer" was too broad. *See* Docket No. 1441, 3-4 (Feb. 24, 2006). The court reasoned that the
22 exclusion of such employees was reasonable to ensure class certification. *Id.* at 4. The court also
23 concluded that such employees could "file their own suits against the Settling Defendants." *Id.*

24     Nevertheless, a number of former "officers" of McKesson, HBOC and their subsidiaries
25 opposed the initial distribution and now oppose further distribution of settlement funds based on
26 their exclusion from the class. *See, e.g.,* Docket Nos. 1718; 1723; 1732; 1733; 1744; 1762. Fairly
27 summarizing their objections, these former "officers" generally were mid-level employees allegedly
28 given the title of "Vice-President" for appearances to those outside McKesson. They complain that

it is unfair to exclude them from the class of recovering shareholders given their lack of involvement in the conduct giving rise to the securities fraud claims and the three settlements, and they urge the court to include them in the class.

The disappointed "officers" and the parties have provided little in the way of authority to guide the court's inquiry, and it is difficult to ascertain the procedural posture of their grievances. At this point in time, the court cannot construe their filings as oppositions to the certification of the settlement classes. That objection was raised during the settlement with the McKesson entities, the court overruled it, and no appeal was taken by "officer" objectors to the judgment. Even if the court had agreed with the "officer" objectors at that time, the court could not have modified the proposed settlements; it could only have rejected them. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court have the ability to 'delete, modify or substitute certain provisions.' The settlement must stand or fall in its entirety."). But the court accepted the proposed settlements, including the definition of "officer," and the court is not free to revisit the issue.[1]

The court thus construes the filings by the "officers" as requests to be included in the class or objections to Analytics' denials of their claims. The requests must be denied. The various officers concede that they possessed, at a minimum, honorary titles of "vice president" of McKesson, HBOC, or one of their subsidiaries or affiliates. Analytics did not err in denying their claims, and the court cannot now include these individuals in the class.

---

[1] The only case cited in any of the papers, *Rossini v. Ogilvy & Mather, Inc.*, held that a district court erred in concluding that Rossini, a "vice-president" who had no policy-making authority, could not be an adequate representative for a class of female professionals and managers suing their employer for gender discrimination. 798 F.2d 590, 596 (2d Cir. 1986). The trial court also broadly excluded "officers" from the class because it believed (erroneously) that such officers were corporate agents responsible for the defendant's compliance with anti-discrimination laws. *Id.* The Second Circuit reversed, holding that the evidence established that the erroneous decision to deny class representative status to Rossini and to exclude her and other non-controlling officers from the class was prejudicial to the class.
    *Rossini* differs significantly from the instant case. Here, we are involved with a claim by individuals who were not included within the class definition chosen by the parties and certified by the court but who, nevertheless, assert that they should be deemed part of the settlement class for the purposes of receiving a share of the benefits obtained for the class. *Rossini*, on the other hand, concerned the propriety of a court's action in not allowing a proposed class representative to serve in that capacity and in redefining the class. *Rossini* has no application to the issue presently before the court.

Various "officers" like Mr. Greco, Susan Weagley Jacobs, and Josephine Lamprey note that "officer" as defined by McKesson's bylaws and Delaware corporate law does not include employees like them. For example, Delaware law defines an "officer" as a specific subset of individuals including the corporation's CEO, CFO, COO, treasurer, controller, and like positions. Del. Corp. Code § 3114(b). The bylaws of the McKesson entities appear to reflect Delaware law and define "officers" as certain employees designated by the board of directors. These details would be highly probative of the meaning of "officer" in the definition of the class if the stipulations of settlement and the court's orders certifying the classes *lacked* a further definition of "officer." But they do not. Delaware law and the entities' bylaws notwithstanding, the parties agreed upon, and the court accepted, a broader, bright line definition of "officer." That definition may be many things, but it is not ambiguous. It clearly excludes anyone that "held a position at or above the level of assistant vice president." Because this definition of "officer" is not ambiguous, it would be inappropriate for the court to resort to these other sources to determine whether these claimants fall within the scope of the "officer" exclusion.

## II. THE PLAN'S OPPOSITION

The McKesson Corporation Profit-Sharing Investment Plan's fiduciary (which the court refers to as "the Plan") also opposes the distribution because Analytics rejected a portion of the Plan's claim.

### A. Background

McKesson formed the Plan to benefit its employees and incentivize them to give McKesson their best work. *See* Barrett Decl., Ex. B § 1.1 (hereinafter "1997 Plan").[2] The Plan acquired McKesson stock in a variety of ways. First, portions of the plan constitute an "employee stock ownership program" and were funded directly by McKesson. *Id.* §§ 4.1(a), 4.3, 4.8, 6.1. Second,

---

[2] The Plan submits two copies of the document setting up the McKesson Profit-Sharing Investment Plan, one from 1997 and a restated version from 2005. *See* Barrett Decl., Exs. A-B. The settlement period spans from 1997 to 1999. While the 2005 Plan is much easier to read, the court believes that the 1997 Plan should logically control the status of the Plan's claim on the settlement proceeds because it defined the status of the Plan during the period of time from which the Plan's claim originates. Thus, to the extent the documents differ, the court believes it would be more appropriate to rely on the 1997 Plan. That aside, the documents do not appear to differ in ways material to the Plan's claim on the settlement fund.

portions of the Plan acquired stock with contributions from employees who channeled a fraction of their pay into the Plan. *Id.* § 3. How the Plan acquired the stock on behalf of the participating employee determined whether the employee had a vested right to benefits under the Plan. *See id.* § 7. It is not clear whether the portion of the claim denied by Analytics corresponded to shares that had vested or included shares that might vest to excluded individuals.

The Plan submitted a claim based on its ownership of 19,273,435 shares of McKesson stock. Analytics accepted the Plan's claim with respect to 18,789,184 shares. Barrett Decl., Ex. D. Analytics rejected the Plan's claim with respect to approximately 500,000 shares held by the Plan but attributed to 233 individuals identified as having held the position of officer or director of McKesson or HBOC." *Id.*

**B.   Analysis**

As a preliminary matter, it is important to note what is not disputed. No one disputes that the Plan is an independent entity. 29 U.S.C. § 1132(d)(1). Nor is there a dispute as to who holds the shares giving rise to the rejected claims – the Plan's trustee does. 29 U.S.C. § 1103(a). Further, there is no dispute that the Plan holds those shares for the benefit of individuals who have been excluded as members of the class and whose claims would be rejected (and have been rejected) if the individuals held the stock. Thus, the question for the court is whether it was appropriate for Analytics to reject the Plan's claim to the extent the claim represented shares that the Plan holds for the benefit of excluded individuals.

The settlement classes include "*all* persons and entities" that purchased McKesson stock. The settlement class then makes seven specific carve-outs. The settlement class excludes: the defendants, the defendants' immediate families, entities in which any defendant had a controlling interest, officers and directors of Bear Stearns, partners of Arthur Andersen, "officers and directors of HBOC or McKesson," and "the legal representatives, heirs, successors, or assigns of any such excluded party."

Lead Plaintiff agrees that the Plan is properly included within the class. No one disputes that the Plan is entitled to a share of the settlement based on its ownership of over 18 million shares of McKesson stock. Nor could they. As discussed, the Plan is an "entity" that owned McKesson stock,

ORDER REGARDING FURTHER DISTRIBUTION OF THE NET SETTLEMENT FUNDS
Master File No. C-99-20743 RMW
TSF                                                                          5

thus it is presumptively included. The Plan is not any of the seven classes of individuals or entities that were excluded from the definition of the settlement class.

Nonetheless, Lead Plaintiff argues that the Plan's claim should be denied, but only in part, based on the excluded status of some of the Plan's beneficiaries. Lead Plaintiff argues that the Plan "elevates form over substance" by distinguishing between the Plan and its beneficiaries. But this is the form imposed by the definition of the settlement class. The definition of the class excludes specified persons and entities; it does not make distinctions between discrete shares of McKesson stock based on the identity of who will eventually benefit from the portion of the recovery paid on behalf of that share of stock. The definition presumptively included all purchasers of McKesson stocks, and it then carved out seven classes of entities. The text of the definition does not permit the court to interrogate the class members to discern for whose benefit they hold their stock, and Lead Plaintiff cites no case that would permit the court to do so.

### III.   OBJECTIONS TO ANALYTICS' DETERMINATIONS

Analytics scrutinized over 100,000 claims. Various claimants have requested that the court review the rejection or determination of their claims. The documentation supporting their claims was provided in two declarations from Richard W. Simmons, the president of Analytics. The court refers to the two declarations as "Simmons I" and "Simmons II."

#### A.   Distribution Amounts

Four claimants complained that they received only a fraction of their recognized claim in the initial distribution from the settlement fund. *See* Simmons II, Ex. F-5. The disputes all arise from the claimants' confusion about how much of their loss they would recover. Analytics calculated each claimant's recognized loss to determine that claimant's correct *pro rata* share of the settlement, which was obviously less than the sum of all of the claimants' recognized losses. Analytics informed each claimant of their recognized loss and sent each a claimant a check for about 18% of that amount. The four claimants do not complain that their recognized loss calculation was incorrect; they complain only that the check they received did not equal their recognized loss. Analytics' determination of those four claims is affirmed.

1  Another seven claimants contest the amount of their "recognized losses," and thus whether
2  they have received the correct *pro rata* share of the settlement. *See* Simmons II, Ex. F-3. Their
3  objections all arise from their confusion about how "recognized loss" was calculated, i.e., each
4  claimant objected that their *actual* loss on the sale of certain McKesson or HBOC securities was not
5  recognized. The court discerns no error, however, in the calculation of these claimants'
6  *recognized* losses. Similarly, the court discerns no error in the sixteen other disputes over
7  recognized loss calculations. *See* Simmons I, Ex. C-4.

### B.     "Officers"

As discussed above, the definition of "officer" as any position at or higher than the level of "assistant vice president" has caused some controversy. Analytics rejected 53 claims in the initial distribution and subsequently rejected six more on the basis that the claimants were excluded from the definition of the settlement classes based on their positions within the defendants. It appears that Analytics rejected these claims based on whether the claimants checked a box on their forms regarding "officer" status, but did not independently determine whether the claimant's position was "at or above the level of assistant vice president." This has generated problems where claimants checked the officer box, but then explained why their position was not "at or above the level of assistant vice president." For example, although the definition of "officer" in the settlements is not ambiguous, it nevertheless is unclear what titles reflect a status below that of "assistant vice president" in light of how divisions of McKesson and HBOC assigned responsibility.[3] Specifically, it is unclear whether a "regional vice president" or "area vice president" is a position "at or above the level of assistant vice president."

Accordingly, the court can sustain Analytics' denial of claims filed by individuals who were clearly "vice presidents" of the defendants or otherwise excluded based on their work for Bear Stearns or Arthur Andersen. *See* Simmons II, Ex. F-2; Simmons I, Ex. C-3. This includes the

---

[3] A former McKesson HBOC human resources manager named Vicki Brewster wrote to the court and explained that "there were multiple levels of Vice Presidents within the organization." She explained McKesson HBOC's hierarchy as Executive Vice President, Senior Vice President, and then as many as three layers of "Vice Presidents." She made no reference to a title corresponding to "assistant vice president." Similarly, Marty Tuominen explained that "you couldn't swing a dead cat without hitting a Vice President" at McKesson's headquarters.

ORDER REGARDING FURTHER DISTRIBUTION OF THE NET SETTLEMENT FUNDS
Master File No. C-99-20743 RMW
TSF                                                  7

disputes brought to the court's attention in letters filed by Denean Rivera (VP of Integration), Judith Tambasco (VP of Product Management), Robert Fearing (VP Technical Services), Frederic Lindsay, Carlton Carden (VP of Product Development), Suzanne Jeanson Travis, Joan M. Tachon, Richard Thompson (VP of CRS, a company acquired by HBO & Co. before merging with McKesson), Larry Greco (VP Pricing), Marty Tuominen, Susan Weagley Jacobs (Senior VP of Interqual), and Josephine Lamprey (Senior VP of Interqual).

However, the court cannot currently sustain or overrule Analytics' denial of the following claims and requests further information as to whether the claimant's position was, in fact, "at or above the level of assistant vice president."

| Claimant | Claim Number | Position |
| --- | --- | --- |
| Kevin Scheckelhoff | 295144 | Regional Vice President of Consulting |
| Holly McInerney | 6049180 | Regional Vice President |
| Holly McInerney | 7124019 | Regional Vice President |
| Holly McInerney | 7124020 | Regional Vice President |
| Daniel Hanekamp | 122922[4] | Region VP of Distribution Operations |
| Joanne Konrath IRRA | 293524 | Area VP Payor Solutions Group |
| Kenneth Morrison | 269936 | Regional VP |

An additional concern is expressed in Mr. Tuominen's letter that Analytics did not verify whether claimants were or were not officers of the McKesson entities. His letter suggests that some "vice presidents" falsely checked "no" on their claim forms and have been included in the settlement class. Analytics did require the forms to be submitted under penalty of perjury and appears to have at least verified some positions. If Mr. Tuominen or anyone else suspects that a claimant may have claimed not to be an officer when they were, in fact, an assistant vice president or above, the court will reconsider their claim on submission of any information suggesting they incorrectly failed to check the officer box on their claim form.

**C. Duplicative Claims**

---

[4] Daniel Hanekamp's other claim (112744) is labeled "PSIP," suggesting it has been duplicated by the Plan's claim. Its rejection is therefore sustained.

ORDER REGARDING FURTHER DISTRIBUTION OF THE NET SETTLEMENT FUNDS
Master File No. C-99-20743 RMW
TSF                                    8

Analytics denied various claims filed by former McKesson employees who participated in the Profit-Sharing Investment Plan because their claims duplicate the claim filed by the Plan. Five claimants requested review of their claims, *see* Simmons II, Ex. F-1 and Simmons I, Ex. C-1, and the court is satisfied that each claim is duplicative of the claim filed by the Plan.

The court has also received letters from employees who purchased stock through the Employee Stock Purchase Program. This program may be distinct from the Plan's employee stock ownership program. Accordingly, the court withholds ruling on the claims filed by Joseph R. Stabile and Robert S. Cauthen and requests clarification of whether their claims are duplicative of the Plan's claim.

Two additional claimants seek review of Analytics' determination that their claims are duplicative. The court cannot discern any problem with Analytics' determination regarding claim 158373. Claim 7187028 is the claim filed by the ex-wife of a prior claimant, who argues that she, not her ex-husband, is entitled to the proceeds of the settlement. Regardless of who properly owns the right to the settlement recovery, it is clear that Analytics properly rejected the claim as duplicative.

### D. Documentation of Purchased Securities

Analytics rejected seven miscellaneous claims for which the claimants requested court review. Five of the claimants failed to supply documentation that they bought and held the relevant securities during the class period. *See* Simmons II, Ex. F-7. Generally, the claimants submitted some proof that they either bought or held the stock, but did not submit complete documentation. Although it seems possible some of the claimants could have perfected their submissions, they did not and Analytics properly rejected the claims.

Similarly, Analytics rejected two other claims for lack of documentation that the claimants purchased securities. *See* Simmons I, Ex. C-2. These claims involve stock options that appear to have been exercised before the class period at relatively low prices. While the claimants may have "lost money" during the class period, they did not purchase securities at a fraudulently heightened price. Their exercise of options prior to the class period excludes them from the definition of the class.

Another group of denials involves claimants who purchased their McKesson or HBOC securities prior to the class period and simply held their securities throughout. *See* Simmons I, Ex. C-5. Again, these claimants "lost money" when the stock price collapsed, but they never purchased any securities at fraudulently inflated prices. Similarly, Analytics rejected one disputed claim because the claimant did not purchase relevant securities during the class period. *See* Simmons II, Ex. F-4. The court affirms the denial of these claims.

The court received a letter from Harry J. Gibson which appears to contest various calculations, but the court was unable to determine how Mr. Gibson calculated his claim. Accordingly, the court affirms Analytics' determination.

### E. Miscellaneous Rejections

Finally, Analytics rejected a claim as barred by the settlement in *In re McKesson HBOC, Inc. ERISA Litigation*. Although this appears to be a proper grounds for rejection, the claim was actually denied for duplicating another claim. Both grounds suffice, and the court affirms the denial.

### IV. ORDER

For the foregoing reasons, the court requests that anyone wishing to submit additional information concerning a claim left open by this order or questioning a claimants' statement that he or she was not an officer do so within twenty days of service of this order on them. Service is deemed to be made on the date of mailing, not the date of receipt. Service on all objectors is to be made by Lead Plaintiff. Any objector submitting further information should send a copy to Analytics, Lead Plaintiff, and the court. Analytics is requested to respond to any further submissions with the additional information requested herein within fifteen days after the last date for the objectors to respond. Lead plaintiff is to submit a revised proposed Order for Second Distribution that conforms with this order and provides alternative wording for those claims left open.

DATED:    3/6/2009

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to the following attorneys:**

| Name | Email |
|---|---|
| Lyn Robyn Agre | lagre@kasowitz.com |
| William F. Alderman | walderman@orrick.com,elee@orrick.com |
| David C. Anson | dcanson@ansonlammerslaw.com |
| William M. Audet | waudet@audetlaw.com |
| David M. Balabanian | david.balabanian@bingham.com |
| Jeffrey A. Barrack | jbarrack@barrack.com |
| Leonard Barrack | lbarrack@barrack.com |
| David Peter Barton | dbarton@flk.com |
| Joseph M. Barton | joebartonesq@gmail.com |
| Stephen R. Basser | sbasser@barrack.com,jhaeussler@barrack.com,cfessia@barrack.com |
| Eric J. Belfi | ebelfi@labaton.com,ElectronicCaseFiling@labaton.com |
| Paul F. Bennett | pfb@gbcslaw.com,cgw@gbcslaw.com |
| Jeffrey L. Bleich | jeff.bleich@mto.com,milvi.giesinger@mto.com |
| Howard S. Caro | hscaro@hhlaw.com |
| Grace A. Carter | gracecarter@paulhastings.com |
| Solomon B. Cera | scera@gbcslaw.com,keg@gbcslaw.com |
| Michael L. Charlson | mlcharlson@hhlaw.com |
| Martin D. Chitwood | MChitwood@chitwoodlaw.com |
| Tracy M. Clements | tclements@kksrr.com,vguzman@kksrr.com,jreed@kksrr.com |
| Josef D. Cooper | jdc@coopkirk.com |
| John F. Cove , Jr | jcove@bsfllp.com |
| Timothy Paul Crudo | timothy.crudo@usdoj.gov,ponly.tu@usdoj.gov |
| Merrill G. Davidoff | mdavidoff@bm.net,sleo@bm.net |
| Paul H. Dawes | paul.dawes@lw.com |
| Robert Scott Dreher | jdlaw@adnc.com |
| Colleen Duffy Smith | cduffysmith@mdstlaw.com,acalderon@mdstlaw.com |
| James M. Finberg | jfinberg@altshulerberzon.com,sbrownell@altshulerberzon.com |
| James T. Fousekis | jim.fousekis@dlapiper.com |
| Carol V. Gilden | cgilden@muchshelist.com |
| Daniel C. Girard | dcg@girardgibbs.com,sfs@girardgibbs.com |
| James Goldberg , Esq | james.goldberg@bryancave.com,kedra.chan@bryancave.com |
| David J. Goldsmith | dgoldsmith@glrslaw.com |
| William M. Goodman | wgoodman@kasowitz.com |
| John K. Grant | johnkg@csgrr.com |
| Francis M. Gregorek | gregorek@whafh.com |
| Ryan M. Hagan | ryan@rhrc.net |
| Edward Han | edwardhan@paulhastings.com |
| James M. Hanlon , Jr | jhanlon@glynnfinley.com |
| Richard M. Heimann | rheimann@lchb.com |
| Jonathan Morind Hoff | jonathan.hoff@cwt.com |
| Hojoon Hwang | hojoon.hwang@mto.com |
| Richard S.E. Johns | rsejohns@yahoo.com |
| Robert N. Kaplan | rkaplan@kaplanfox.com |
| Reed R. Kathrein | reed@hbsslaw.com,nancyq@hbsslaw.com,sf_filings@hbsslaw.com |
| Richard Keenan | rkeenan@flk.com,dbarton@flk.com,sdevoto@flk.com |
| Traci Michelle Keith | Traci.Keith@lw.com,svdocket@lw.com,Deborah.Peterson@lw.com |
| Karen Leanne Kennard | kkennard@mdbe.com |
| Helen Byungson Kim | hkim@bakerlaw.com,bkennedy@bakerlaw.com,tcole@bakerlaw.com |
| J. Philip Kirchner | phil.kirchner@flastergreenberg.com |
| Tracy R. Kirkham | trk@coopkirk.com |
| M. Richard Komins | mkomins@barrack.com,lcrawley@barrack.com |
| Ronald Scott Kravitz | RKravitz@LinerLaw.com,jwong@linerlaw.com,jchau@linerlaw.com |

**United States District Court**
For the Northern District of California

ORDER REGARDING FURTHER DISTRIBUTION OF THE NET SETTLEMENT FUNDS
Master File No. C-99-20743 RMW
TSF                                                    11

**United States District Court**
For the Northern District of California

| Name | Email |
|---|---|
| Mark D. Lammers | mdlammers@ansonlammerslaw.com |
| Meredith N. Landy | mlandy@omm.com |
| William S. Lerach | e_file_sd@lerachlaw.com |
| Roberta D. Liebenberg | rliebenberg@finekaplan.com |
| James Elliot Lyons | jlyons@skadden.com |
| Betsy Carol Manifold | manifold@whafh.com |
| Anne-Christine Massullo | Anne-Christine.Massullo@usdoj.gov |
| Rachel E. Matteo-Boehm | rachel.matteo-boehm@hro.com |
| James McManis | jmcmanis@mcmanisfaulkner.com,clarsen@mcmanisfaulkner.com |
| James Brian McTigue | bmctigue@mctiguelaw.com,dbond@mctiguelaw.com |
| Jean-Paul Marie Menard | jpmenard@mckennalong.com |
| Matthew Robert Miller | matt@dreherlawfirm.com |
| Timothy Alan Miller | tmiller@skadden.com |
| John D. Minton | john.minton@lw.com |
| Andrew Thomas Mortl | amortl@glynnfinley.com |
| Kimberly Lillian Myers | kmyers@rh-law.com,rhansmeier@rh-law.com |
| Peter Scott Myers | myerslawfirm@aol.com |
| Behram Viraf Parekh | bparekh@yaplaw.com |
| Jonathan M. Plasse | jplasse@glrslaw.com |
| Tony G. Powers | tpowers@rh-law.com |
| Scott E. Poynter | scott@emersonpoynter.com,tanya@emersonpoynter.com |
| Gwyn Donna Quillen | gquillen@agsk.com |
| Leonard Donald Raub, Jr | draub@reorglaw.com |
| John A. Reding | jackreding@paulhastings.com |
| Paul Arthur Renne | prenne@cooley.com,moyespe@cooley.com |
| Kieran Paul Ringgenberg | kringgenberg@bsfllp.com,sphan@bsfllp.com |
| Brian J. Robbins | notice@ruflaw.com |
| Gerald J. Rodos | grodos@barrack.com |
| Stanley Gracey Roman | sroman@kksrr.com,vguzman@kksrr.com,jreed@kksrr.com |
| David J. Romanski | david.romanski@dlapiper.com |
| Christopher Paul Seefer | chriss@csgrr.com |
| Michael J. Shepard | mjshepard@hhlaw.com,mdewers@hhlaw.com,kwong@hhlaw.com |
| Moses Silverman | msilverman@paulweiss.com |
| Allon Stabinsky | allon.stabinsky@lw.com |
| David Ronald Stickney | davids@blbglaw.com,beng@blbglaw.com |
| Robert John Stumpf | rstumpf@smrh.com |
| Bernard Reynold Suter | ben.suter@kyl.com,kay.klein@kyl.com |
| Joseph J. Tabacco, Jr | jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com |
| Eric S. Vanderpool | evanderpool@buchalter.com |
| Charles Kramer Verhoeven | charlesverhoeven@quinnemanuel.com |
| Timothy Scott Vick | scott.vick@bingham.com,gwyn.quillen@bingham.com |
| Philip J. Wang | phil@philwanglaw.com,trina.toussaint@lw.com,svdocket@lw.com |
| Braden O. Wilhelm | bradenwilhelm@paulhastings.com,marshamcnairy@paulhastings.com |
| Carl Brandon Wisoff | bwisoff@fbm.com,mzappas@fbm.com,calendar@fbm.com |
| Douglas R. Young | dyoung@fbm.com,calendar@fbm.com |
| Kevin Jay Yourman | service@wyca.com |
| Edward Scott Zusman | ezusman@mzclaw.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 3/6/2009

TSF
**Chambers of Judge Whyte**

ORDER REGARDING FURTHER DISTRIBUTION OF THE NET SETTLEMENT FUNDS
Master File No. C-99-20743 RMW
TSF                                              12