**BARRACK, RODOS & BACINE**
Stephen R. Basser (121590)
Samuel M. Ward (216562)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Fax: (619) 230-1874

– and –

Leonard Barrack
Jeffrey W. Golan
Chad Carder
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963–0600
Fax: (215) 963–0838

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
David R. Stickney (188574)
Timothy A. DeLange (190768)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (858) 793-0070
Fax: (858) 793-0323

– and –

Max W. Berger
John C. Browne
Rochelle Feder Hansen
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 554-1400
Fax: (212) 554-1444

**Filed**

JAN 0 4 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*Attorneys for Lead Plaintiff Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems and as Trustee of the New York State Common Retirement Fund and Co-Lead Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re McKESSON HBOC, INC. SECURITIES LITIGATION | ) ) ) |
| | Master File No.: 99-CV-20743 RMW-(PVT) |
| | And Related Cases |
| This Document Relates To: | ) ) ) |
| ALL ACTIONS. | ) ) ) |
| | CLASS ACTION |
| | LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH ARTHUR ANDERSEN LLP OF CONTINGENT PAYMENT CLAIM, AND IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| | DATE:   February 8, 2013 TIME:    9:00 AM CTRM:   6, 4th Floor JUDGE: Honorable Ronald M. Whyte |

NOT. OF MOT., MOT. & MEMO OF LAW
Master File No: C99-20743 RMW-PVT

BY FAX

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.     INTRODUCTION ........................................................................................................... 1

II.    STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3)) ...................................................... 2

III.   OVERVIEW ................................................................................................................... 2

     A.    The Prior McKesson Settlements and Contingent Payment Claim
           Regarding Andersen.......................................................................................... 2

     B.    The Negotiated Resolution of the Contingent Payment Claim............................ 4

     C.    Attorneys' Fees and Expenses Requested.......................................................... 6

     D.    Adequate Notice of the Settlement Has Been Provided ...................................... 7

IV.   ARGUMENT................................................................................................................... 8

     A.    Final Approval of the Settlement Should Be Granted Because It Is Fair,
           Reasonable and Adequate ................................................................................. 8

     B.    Lead Counsel's Application for an Award of Attorneys' Fees and
           Reimbursement of Expenses Should Be Granted ............................................. 12

V.     CONCLUSION............................................................................................................... 15

1

## TABLE OF AUTHORITIES

2
**Cases**

3
*Bateman Eichler, Hill Richards, Inc. v. Berner,*
   472 U.S. 299 (1985)..................................................................................12

4

*Boeing Co. v. Van Gemert,*
5
   444 U.S. 472, 478 (1980)...........................................................................12

6
*Class Plaintiffs v. Seattle,*
   955 F.2d 1268 (9th Cir. 1992) .....................................................................9

7

*In re Daou Sys., Secs. Litig.,*
8
   2008 U.S. Dist. LEXIS 56320 (S.D. Cal. July 24, 2008) ..........................13

9
*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980)....................................................................10

10

*In re First Capital Holding Corp. Fin. Prods. Sec. Litig,*
11
   1992 U.S. Dist. LEXIS 14337 (N.D. Cal. June 10, 1992) .........................10

12
*Franco v. Ruiz Food Prods., Inc.,*
   2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) .......................11

13
*Gong-Chun v. Aetna Inc.,*
   2012 U.S. Dist. LEXIS 96828 (E.D. Cal. July 11, 2012) ..........................11

14

*Greebel v. FTP Software, Inc.,*
15
   939 F. Supp. 57 (D. Mass. 1996) ...............................................................10

16
*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .....................................................................9

17

*Harris v. Marhoefer,*
18
   24 F.3d 16 (9th Cir. 1994) .........................................................................15

19
*In re Immune Response Sec. Litig.,*
   497 F. Supp. 2d 1166 (S.D. Cal. 2007).......................................................15

20

*Linney v. Cullular Alaska P'ship,*
21
   1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997).........................10

22
*In re Mego Fin. Corp. Sec. Litig.,*
   13 F.3d 454 (9th Cir. 2000) .........................................................................9

23
*Mills v. Elec. Auto-Lite Co.,*
   396 U.S. 375 (1970)....................................................................................12

24

25

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ................................................................ 8, 9

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ................................................................ 13

*Penn. v. Del. Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986) ............................................................................. 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ................................................................ 14

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ................................................................ 13

*Teachers' Ret. Sys. of La. v. A.C.L.N, Ltd.,*
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................................... 11

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ................................................................ 9, 14

*Util. Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989) ................................................................ 8

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ................................................................ 8

*Vincent v. Hughes Air West, Inc.,*
    557 F.2d 759 (9th Cir. 1977) ................................................................ 12

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ........................................................ 13, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96, 123 (2d Cir. 2005) .......................................................... 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ............................................................ 9, 16

*White v. Experian Info. Solutions, Inc.,*
    803 F. Supp. 2d 1086 (C.D. Cal. 2011) .............................................. 11

**Federal Rules of Civil Procedure**

Rule 23(e) ................................................................................................ 7

Rule 23(h)(1) .................................................................................... 12, 15

1   TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2             PLEASE TAKE NOTICE THAT, pursuant to the Court's Order Preliminarily Approving

3   Settlement of Contingent Payment Claim with Arthur Andersen LLP and Providing for Notice

4   (filed November 28, 2012), on February 8, 2013, at 9:00 a.m., or as soon thereafter as counsel

5   may be heard before the Honorable Ronald M. Whyte, United States District Judge, at 280 South

6   First Street, Courtroom 6, Fourth Floor, San Jose, California 95113, the Court-appointed Lead

7   Plaintiff, Thomas P. DiNapoli, Comptroller of the State of New York as Administrative Head of

8   the New York State and Local Retirement Systems and as Trustee of the New York State

9   Common Retirement Fund, will, and hereby does, move for entry of an order finally approving

10  the settlement and release of the Contingent Payment Claim against Arthur Andersen LLP in

11  exchange for payment by Andersen of $9.5 million in cash and for approval of an award of

12  attorneys' fees and reimbursement of expenses in connection with the settlement, as applied for

13  and requested by Bernstein Litowitz Berger & Grossmann LLP and Barrack, Rodos and Bacine.

14            This Motion and Application is based on the accompanying Memorandum of Law; the

15  Joint Declaration of Jeffrey W. Golan and John C. Browne in Support of Final Approval of

16  Settlement with Arthur Andersen LLP of Contingent Payment Claim, and in Support of Lead

17  Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses; the

18  Agreement between Lead Plaintiff and Arthur Andersen LLP Concerning Contingent Payment

19  Claim dated November 6, 2012; all other pleadings filed in this case; and such additional

20  evidence or argument as may be presented at the hearing.

21

22

23

24

25  NOT. OF MOT., MOT. & MEMO OF LAW
    Master File No: C99-20743 RMW-PVT

1

**MEMORANDUM OF LAW**

2

## I.    INTRODUCTION

3

Lead Plaintiff, Thomas P. DiNapoli, Comptroller of the State of New York, as

4

Administrative Head of the New York State and Local Retirement Systems and as Trustee of the

5

New York State Common Retirement Fund ("Lead Plaintiff" or "NYSCRF"), respectfully

6

submits this memorandum in support of (a) the motion for final approval of the settlement

7

reached between Lead Plaintiff and Defendant Arthur Andersen LLP ("Andersen") of the

8

Contingent Payment Claim[1] that remained open between the two parties from the Stipulation of

9

Settlement of December 19, 2006 (sometimes referred to herein as the "McKesson Stipulation of

10

Settlement") as reflected in the Agreement Between Lead Plaintiff and Arthur Andersen LLP

11

Concerning Contingent Payment Claim, dated November 6, 2012 (the "Settlement");[2] and

12

(b) Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses in

13

connection with the Settlement.  For the reasons set forth below, it is respectfully requested that

14

_____

15

[1]    All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in either the Agreement Between Lead Plaintiff and Arthur Andersen LLP Concerning

16

Contingent Payment Claim, dated November 6, 2012 and submitted to the Court by letter dated November 7, 2012, the Stipulation of Settlement between Lead Plaintiff and Andersen dated

17

December 19, 2006, or the Summary Notice of Proposed Settlement of Contingent Payment Claim with Arthur Andersen LLP ("Summary Notice"), mailed to members of the McKesson Class on December 12, 2012.

18

[2]    NYSCRF also served as the Lead Plaintiff in an action in the U.S. District Court for the

19

Southern District of New York entitled *In re WorldCom, Inc. Securities Litigation*, No. 02-Civ. 3288 (DLC) (hereafter "*WorldCom*"), pending before the Honorable Denise L. Cote, in which

20

Andersen was also a defendant.  Lead Plaintiff negotiated settlements of similar types of contingent claims existing in both *McKesson* and *WorldCom*.  Judge Cote granted final approval

21

of the settlement of the Contingent Payment Claim reached in the *WorldCom* case respecting Andersen on December 14, 2012. *See WorldCom* Final Approval Order, Exhibit A to the Joint

22

Declaration of Jeffrey W. Golan and John C. Browne in Support of Final Approval of Settlement with Arthur Andersen LLP of Contingent Payment Claim, and in Support of Lead Counsel's

23

Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl."). Andersen's obligation to make payment pursuant to both settlements is now conditional on final

24

approval of this Settlement.  If final approval of the proposed Settlement is not obtained, Andersen may elect to declare both settlements null and void at its option.

25

NOT. OF MOT., MOT. & MEMO OF LAW                                                    -1-
Master File No: C99-20743 RMW-PVT

1   the Settlement securing an all cash payment of $9.5 million from Andersen and the fee and

2   expense application of Lead Counsel be approved.

3   **II.**     **STATEMENT OF ISSUES (CIVIL L.R. 7-4(a)(3))**

4         1.     Should the Court grant final approval of the settlement and release of the

5   Contingent Payment Claim against Andersen in exchange for payment by Andersen of $9.5

6   million?

7         2.     Should the Court approve the requested award of the attorneys' fees and

8   reimbursement of expenses?

9   **III.**     **OVERVIEW**

10       **A.**     **The Prior McKesson Settlements and**
             **Contingent Payment Claim Regarding Andersen**

11       The Settlement is the final spoke in a wheel of prior recoveries from various defendants

12   totaling approximately $1.04 billion. Previously, NYSCRF entered into three settlements in this

13   Litigation on behalf of the McKesson Class. First, it settled the claims of the class against

14   McKesson HBOC, Inc. and HBO & Company for $960 million, securing final approval on

15   February 24, 2006. Second, it settled with Andersen for $72.5 million in cash and potential

16   contingent claims, securing final approval of that settlement on April 13, 2007. Third, it settled

17   with Bear, Stearns & Co. Inc. for $10 million, securing final approval of that settlement on

18   January 18, 2008. Joint Decl. ¶ 1.

19       This case was extensively and vigorously litigated over a span of seven years prior to the

20   achievement of the McKesson Stipulation of Settlement. The Litigation required the filing of

21   several amended complaints, resulting in sustained claims against multiple defendants, including

22   Andersen; the review and analysis of over two million pages of documents; and the depositions

23   of over seventy-five witnesses, including eleven current or former Andersen partners and

24

25   NOT. OF MOT., MOT. & MEMO OF LAW                      -2-
      Master File No: C99-20743 RMW-PVT

1    employees.[3]

2        In addition to the cash payment by Andersen of $72.5 million (the "Cash Payment"),

3    Lead Plaintiff and Andersen also agreed to two potential, contingent payments based on: (a) an

4    amount equivalent to 5% of the amounts, if any, actually paid by Andersen to its present or

5    former partners, participating principals, national partners and national directors in repayment of

6    any and all subordinated notes (the "Notes") issued in respect of paid in capital and/or

7    subordinated loans (the "Contingent Loan Repayment Obligation"), and (b) an amount equal to

8    the difference between any Net Cash Amount paid by Andersen in settlement of any other single

9    legal action and the $72.5 million Cash Payment.  These two contingent payment obligations are

10   referred to collectively as the "Contingent Payment Claim." Joint Decl. ¶ 2.[4]

11       The McKesson Stipulation of Settlement specifically acknowledged the understanding of

12   each of the Parties that payment on the Notes was suspended at the time the stipulation was

13   entered into and that repayment on the Notes was contingent on many factors.  At the time of the

14   McKesson Stipulation of Settlement, Andersen confronted substantial litigation claims and other

15   contingencies which caused it to suspend all payments on the Notes and rendered it highly

16   uncertain whether, when, or to what extent Andersen would be in a position to make any

17   repayments with respect to the Notes.  Joint Decl. ¶ 3.

18       After extensive due diligence concerning the value of the Contingent Payment Claim and

19   negotiations with Andersen, Lead Plaintiff has now reached an agreement with Andersen

20

21   [3]    The Court is respectfully referred to the April 6, 2007 Joint Declaration of David R.
     Stickney and M. Richard Komins in Support of Final Approval of Class Action Settlement with
22   Arthur Andersen LLP, the Plan of Allocation, and an Award of Attorneys' Fees and
     Reimbursement of Expenses, Docket No. 1556, which provides a detailed recitation of the robust
23   history of the Litigation leading to the Stipulation of Settlement in 2006 with Andersen.

     [4]    No other single legal action against Andersen produced a settlement with a Net Cash
24   Payment exceeding $72.5 million that would trigger the second contingent payment obligation.
     Joint Decl. ¶ 4.

25   NOT. OF MOT., MOT. & MEMO OF LAW                                                        -3-
     Master File No: C99-20743 RMW-PVT

1    pursuant to which Andersen shall make an ***additional payment*** of $9.5 million (the "Settlement

2    Amount") for the benefit of the McKesson Class, in addition to the previous $72.5 million Cash

3    Payment, for a total recovery from Andersen of $82 million.  Joint Decl. ¶ 7.

4        **B.**    **The Negotiated Resolution of the Contingent Payment Claim**

5            At the time of the initial settlement with Andersen, neither Lead Plaintiff nor Andersen

6    could have predicted with any certainty that Andersen would be in a position to make any

7    repayments with respect to the Notes that would trigger an obligation on Andersen's part to

8    make any further settlement payment to the McKesson Class.  By the latter part of 2011,

9    however, Andersen anticipated that it could be in a position to make some repayments with

10   respect to the Notes, but the ultimate amounts of any such repayments, the number of such

11   repayments, and the time period over which any such repayments would be made were unknown

12   and may not become known for years.  Joint Decl. ¶ 4.

13           In view of Andersen's anticipation that it would be in a position to make some

14   repayments with respect to the Notes, the Parties entered into a series of due diligence efforts

15   and negotiations beginning in late October 2011 and continuing through September 2012 to

16   ascertain whether Lead Plaintiff and Andersen could reach a resolution of the Contingent Loan

17   Repayment Obligation for a fixed amount.  Such a resolution, subject to approval of the Court,

18   would allow a single distribution to eligible members of the McKesson Class, without requiring

19   them to continue to wait for a payment on the Contingent Payment Claim.  Joint Decl. ¶ 5.

20           Lead Plaintiff and Andersen engaged in multiple negotiating and due diligence sessions,

21   which included extensive financial investigation and analysis.  As part of these negotiations,

22   Andersen shared with Lead Plaintiff and Lead Counsel certain information concerning its assets,

23   liabilities, income and contingencies.  Further, Lead Counsel retained a valuation consultant,

24   Conway, Del Genio, Gries & Co. ("CDG"), to assist in seeking to ascertain when, if, and in what

25

1    amounts Andersen may be able to make repayments on the Notes.  CDG is the same expert

2    consulting firm that was used to perform due diligence and analysis of Andersen's financial

3    condition at the time of the 2006 settlement with Andersen.  While it became clear during the

4    negotiation sessions that Andersen would have some funds left to make repayments to its Note

5    holders, it was also clear that the amount and timing of those payments remained *highly*

6    *uncertain*.  Joint Decl. ¶¶ 5-6.

7          At the conclusion of these extended negotiations, the Parties reached an agreement

8    pursuant to which Andersen would make a further payment of $9.5 million for the benefit of the

9    McKesson Class in exchange for a full release of the Contingent Payment Claim negotiated as

10   part of the McKesson Stipulation of Settlement.   This Settlement, subject to the Court's

11   approval, will resolve the only remaining outstanding recovery issue in this case.  The Settlement

12   will resolve the Contingent Payment Claim in a way that provides a known, certain, and

13   immediate payment to McKesson class members, rather than the alternative of a series of

14   payments being made to class members in uncertain amounts, and at intermittent times,

15   potentially over the next three to five years.  Joint Decl. ¶ 7.  The Settlement thus takes into

16   account the substantial risks and obstacles associated with the continuing uncertainty as to the

17   amount that could be recovered pursuant to the Contingent Payment Claim and the possibility

18   that such recovery might be delayed for years.  *Id.* ¶ 8.  Lead Plaintiff, NYSCRF, which has

19   previously demonstrated itself to be an active and well-qualified lead plaintiff, participated with

20   Lead Counsel in the negotiating and due diligence sessions with Andersen and fully supports

21   approval of the Settlement.  *Id.*  Moreover, the only other condition to consummation of the

22   Settlement, assuming it is approved by this Court, has now been satisfied, with the entry of the

23   *WorldCom* Final Approval Order on December 14, 2012.  Joint Decl. ¶ 9 & Exhibit A.

24

C.    **Attorneys' Fees and Expenses Requested**

Having achieved this significant cash benefit for the McKesson Class, Lead Counsel seek an award of attorneys' fees of $134,930.00 or 1.42% of the Settlement Amount and reimbursement of expenses incurred.  The requested attorneys' fees award represents a multiplier of 1.16 based on Lead Counsel's lodestar attributable to this case with respect to the resolution of the Contingent Payment Claim of $116,125.00. Joint Decl. ¶ 10.[5]  In light of the risks faced, the complexity of the issues surrounding recovery, the quality of the legal work performed, the amount of time and effort expended by Lead Counsel, and the size of the fee in relation to the Settlement achieved, the fee request of 1.42% of the Settlement Amount is both fair and reasonable under the standards used in this Circuit.

Significantly, the fee requested by Lead Counsel has been approved by Lead Plaintiff. Joint Decl. ¶ 12.  NYSCRF has also approved Lead Counsel's application for reimbursement of their expenses incurred from the time of the last fee and expense application, as is customary in securities class cases when a further distribution of a settlement will be made. *Id.*  The Summary Notice distributed to the McKesson Class stated that Lead Counsel would request an award of attorneys' fees of $134,930.00 (1.42% of the $9.5 million Settlement Amount) and reimbursement of expenses in an amount not to exceed $40,000.00,[6] and to date no member of the Class has objected to such an award.

---

[5]      Because Lead Counsel's work in negotiations and due diligence sessions with Andersen relate to the Contingent Payment Claim in both this case and in *WorldCom*, Lead Plaintiff has authorized Lead Counsel to attribute 20% of their total lodestar to this case and 80% of their total lodestar to *WorldCom*, in proportion to the total recovery achieved in each case.  The lodestar amount also reflects the additional time spent with respect to obtaining final approval of this Settlement. Joint Decl. ¶ 10.

[6]      Lead Counsel seek reimbursement of their out-of-pocket expenses incurred in connection with the prosecution and resolution of this Action that were not reimbursed as well as the additional expenses incurred by Lead Counsel and Lead Plaintiff in connection with achieving this Settlement in the amount of $37,885.46; within the $40,000.00 limit set forth in the Notice.

1      **D.    Adequate Notice of the Settlement Has Been Provided**

2      Pursuant to the Court's Order Preliminarily Approving Settlement with Arthur

3   Andersen LLP of Contingent Payment Claim and Providing for Notice, dated November 28,

4   2012 (the "Preliminary Approval Order"), on December 12, 2012, the Notice was published on

5   the case website, www.mckessonhbocsettlement.com, and on Lead Counsel's websites,

6   www.blbglaw.com and www.barrack.com. Also, pursuant to the Preliminary Approval Order,

7   the Summary Notice was published on December 12, 2012 through *PR Newswire* and

8   mailed directly to all members of the McKesson Class who cashed their most recent prior

9   distribution from the proceeds of the McKesson settlements. In addition, printed copies of the

10   Notice are being mailed or emailed to any member of the McKesson Class who requests

11   such a copy by mail, email, or telephone. The Summary Notice and Notice, previously

12   approved by this Court, state the terms and conditions of the Settlement; that Lead Counsel shall

13   request an award of attorneys' fees of $134,930.00 (1.42% of the $9.5 million Settlement

14   Amount) and reimbursement of expenses in an amount not to exceed $40,000.00; and the method

15   by which McKesson class members may object to the Settlement or the application for fees and

16   expenses.

17      Objections to the Settlement and/or the fee and expense application are due by January

18   18, 2013. As of the date of this writing, no objections have been received.

19

20

21

---

22   A substantial portion of this amount, $13,000.00, is attributable to the cost of Lead Counsel's
valuation consultant, CDG, that was retained for purposes of assessing the proposed settlement

23   of the Contingent Payment Claim. Since CDG's work related to both *McKesson* and *WorldCom,*
its total bill has, as was done with respect to Lead Counsel's lodestar, been apportioned between

24   the two cases. The $13,000.00 included in this expense request represents 20% of CDG's total
fee with respect to this engagement.

---

## IV.  ARGUMENT

### A.  Final Approval of the Settlement Should Be Granted Because It Is Fair, Reasonable and Adequate

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . . ."); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). In deciding whether to approve the amicable resolution of a stockholders' class action under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must find that the proposed agreement is "fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625.

The Ninth Circuit has identified several non-exhaustive factors to be considered in determining whether a proposed settlement is fair, reasonable, and adequate, which this Court previously considered in the context of the McKesson Stipulation of Settlement approved on April 13, 2007. *See* Docket No. 1562. Because Lead Plaintiff seeks final approval of Andersen's agreement to make an additional payment into the common fund beyond the $72.5 million Cash Payment previously agreed upon and approved by the Court, it is not necessary to recite herein all the factors set forth by the Ninth Circuit in support of approval. This Settlement only concerns the recovery of the McKesson Class on the Contingent Payment Claim from Andersen. Lead Plaintiff respectfully submits that the relevant factors for consideration by the Court regarding the additional amount of $9.5 million in settlement of the Contingent Payment Claim are: (1) the experience and views of Lead Plaintiff and Lead Counsel; (2) the efforts by Lead Plaintiff and Lead Counsel in securing the additional payment in release of the Contingent

1  Payment Claim; (3) the existing financial profile of Andersen; and (4) whether securing an

2  additional $9.5 million in satisfaction of the Contingent Payment Claim is reasonable. *See In re*

3  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150

4  F.3d 1011, 1026 (9th Cir. 1998). *See also Officers for Justice*, 688 F.2d at 625; *Torrisi v. Tucson*

5  *Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Class Plaintiffs v. Seattle*, 955 F.2d 1268,

6  1291 (9th Cir. 1992); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387

7  (D. Ariz. 1989), *aff'd*, 955 F.2d 1268 (9th Cir. 1992).

8         A review of these factors strongly supports approval of this Settlement. The $9.5 million

9  payment provides considerable additional relief to the Class, adding another 13% to Andersen's

10  earlier Cash Payment.   The Settlement is the result of arm's-length negotiations and is

11  recommended for approval by an involved Lead Plaintiff and Lead Counsel who are intimately

12  familiar with the complex issues involved in this Litigation and Settlement, entitling it to a

13  presumption of fairness.  Lead Plaintiff and Lead Counsel agreed upon this resolution of the

14  Contingent Payment Claim only after undertaking and completing a considerable amount of due

15  diligence respecting Andersen's financial position, with the assistance of an expert business

16  appraisal firm.  Prior to agreeing to this Settlement, Lead Plaintiff and Lead Counsel received

17  from Andersen certain information concerning its assets, liabilities, income and contingencies.

18  To assist in ascertaining when, if, and in what amounts Andersen may be able to make

19  repayments on the Notes, Lead Counsel retained the same highly-skilled valuation consultant it

20  had used in evaluating Andersen's financial condition in 2005 and 2006.  Additionally, Lead

21  Counsel, who are experienced in these matters, view this Settlement as highly favorable.  Joint

22  Decl. ¶¶ 6-8.

23         Under case law in this Circuit, the proposed Settlement enjoys a ***presumption of fairness***

24  where, as here, it was the product of arm's-length negotiations conducted by capable,

1   experienced counsel possessing a firm understanding of the strengths and weaknesses of their

2   respective clients' positions. *See Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997

3   U.S. Dist. LEXIS 24300, at \*16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998);

4   *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

5   939 (9th Cir. 1981). Courts recognize that the opinion of experienced counsel supporting the

6   settlement after vigorous arm's-length negotiations is entitled to considerable weight. *See, e.g.,*

7   *Ellis*, 87 F.R.D. at 18; *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901,

8   1992 U.S. Dist. LEXIS 14337, at \*5-8 (N.D. Cal. June 10, 1992).

9        Further, where, as here, the settlement was reached under the supervision of an

10   appropriately selected Lead Plaintiff, it is entitled to an even greater presumption of

11   reasonableness under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See*

12   *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63-64 (D. Mass. 1996) (quoting PSLRA Senate

13   Committee Report observing that "[i]nstitutions with large stakes in class actions have much the

14   same interests as the plaintiff class generally; thus, courts could be more confident settlements

15   negotiated under the supervision of institutional plaintiffs were 'fair and reasonable' . . . .").

16   NYSCRF firmly endorses this Settlement with Andersen resolving the outstanding Contingent

17   Payment Claim. Joint Decl. ¶ 8.

18        The issues surrounding the Contingent Payment Claim were also complex and the

19   Parties' failure to reach this Settlement would have subjected the McKesson Class to substantial

20   risks. Joint Decl. ¶ 6. At the time Lead Plaintiff reached its settlement with Andersen in 2006,

21   Andersen confronted substantial litigation claims and other contingencies which had caused it to

22   suspend all payments on the Notes and rendered it highly uncertain whether, when or to what

23   extent Andersen would be in a position to make any repayments with respect to the Notes.

24   While Andersen now anticipates making some repayments with respect to the Notes, substantial

25

NOT. OF MOT., MOT. & MEMO OF LAW                                                    -10-
Master File No: C99-20743 RMW-PVT

1  uncertainty still exists and may continue to exist for years with respect to the timing and amounts

2  of such repayments, the ultimate amounts of such repayments, the number of such repayments,

3  and the time period over which such repayments would be made.  Joint Decl. ¶ 4.

4      This Settlement, thus, provides the type of "certain and prompt relief" cited as a factor

5  supporting settlements in *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012

6  U.S. Dist. LEXIS 169057, at *34 (E.D. Cal. Nov. 27, 2012), *Gong-Chun v. Aetna Inc.*, No. 1:09-

7  cv-01995-SKO, 2012 U.S. Dist. LEXIS 96828, at *38 (E.D. Cal. July 11, 2012), and *White v.*

8  *Experian Information Solutions, Inc.*, 803 F. Supp. 2d 1086, 1095 (C.D. Cal. 2011).  As other

9  courts have recognized, "[m]uch of the value of a settlement lies in the ability to make funds

10  available promptly." *Teachers' Ret. Sys. of La. v. A.C.L.N, Ltd.*, Master File No. 01-CV-11814

11  (MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) (quoting *In re "Agent Orange" Prod.*

12  *Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179

13  (2d Cir. 1987)).  Given these circumstances, Lead Plaintiff's ability to reach the Settlement for

14  an immediate and certain payment of $9.5 million is in the best interests of the McKesson Class.

15  Moreover, the length of the Litigation to date and the advanced age of many class members

16  underscore the importance of the ability to make a prompt and single distribution with respect to

17  the Contingent Payment Claim, rather than waiting for uncertain payments over a period of

18  possibly three to five years.

19      For all of these reasons, Lead Plaintiff respectfully submits that this Court should grant

20  final approval of the Settlement as fair, reasonable and adequate.

**B.    Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses Should Be Granted**

Having achieved this significant additional cash benefit for the McKesson Class, Lead Counsel request an award of attorneys' fees of $134,930.00 – 1.42% of the additional Settlement Amount – plus reimbursement of expenses incurred in the amount of $37,885.46. Joint Decl. ¶¶ 10-11. The fee being requested by Lead Counsel has been vetted and approved by Lead Plaintiff, which has also approved Lead Counsel's application for reimbursement of their expenses. Joint Decl. ¶ 12.

The Supreme Court has emphasized that private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). In pursuit of enforcing federal securities law based claims, Lead Counsel litigated this important action seeking redress for aggrieved class members for approximately eight years. Now, after an additional year of due diligence and earnest negotiation, Lead Counsel have recovered the additional sum of $9.5 million from Andersen.

The Supreme Court and the Ninth Circuit have long recognized that where counsel's efforts have created a "common fund" for the benefit a class, counsel should be compensated from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). Pursuant to this equitable principle and Rule 23(h)(1) of the Federal Rules of Civil Procedure, the Court has broad authority to "award reasonable attorney's fees and nontaxable costs . . . ."

Lead Counsel seek an award of attorneys' fees based on a percentage of the common fund created as a result of their efforts. The Ninth Circuit has expressly approved the

percentage-of-recovery approach in awarding attorneys' fees and this approach has become the
prevailing method of awarding fees in common fund cases, *see, e.g., Vizcaino v. Microsoft
Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Indeed, the previous orders awarding fees in this
Litigation adopted the percentage method. *See* Docket Nos. 1444, 1560, 1727.

Here, Lead Counsel respectfully submit, the fee requested is clearly reasonable under all
factors and tests normally employed by courts within the Ninth Circuit. <u>First</u>, in comparison to
the 25% "benchmark" established in this Circuit, *see, e.g., In re Daou Sys., Sec. Litig.*, No. 98-
CV-1537-L, 2008 U.S. Dist. LEXIS 56320, at *4 (S.D. Cal. July 24, 2008); *Paul, Johnson,
Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989); *Vizcaino*, 290 F.3d at 1048-50,
Lead Counsel here seek a fee of only 1.42% of the Settlement Amount. <u>Second</u>, the fee being
sought represents just a 1.16 multiple of Lead Counsel's time devoted to the due diligence,
negotiation and presentation of the Settlement to this Court. Thus, while a lodestar "cross-
check" is not required in this Circuit, *see Vizcaino*, 290 F.3d at 1050 n. 5, the 1.16 multiple
amply supports the reasonableness of the requested fee.[7] Specifically, since commencing the
extended process in October 2011 of investigating and analyzing Andersen's financial status,
negotiating a settlement of the Contingent Payment Claim, and working towards achieving the
Settlement's finality and approval, Lead Counsel spent 184.25 hours on this project, incurring a
lodestar of $116,125.00 as of December 31, 2012. Joint Decl. ¶ 10. Lead Counsel's fee request

---

[7]    A lodestar calculation is performed by multiplying the number of hours reasonably
expended in the litigation by the reasonable hourly rates of the attorneys. *Penn. v. Del. Valley
Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). The lodestar is then adjusted by
using a "multiplier" that is based on the same factors considered by the court in determining
what level of a percentage based fee is appropriate, with the risk and result being the primary
factors. *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). Here, since some of the work
was done both for the benefit of the *WorldCom* and *McKesson* classes, Lead Counsel's time and
lodestars were allocated to the two cases in the same percentage of their respective Contingent
Payment Claims, providing a further efficiency of efforts by Lead Counsel for the benefit of each
of the classes.

1  of 1.42% of the $9.5 million common fund thus results, after a lodestar cross-check, in a

2  multiplier of 1.16.  *Id.*

3       When considering fee requests calculated using the lodestar method, courts frequently

4  award significant multipliers.  *See, e.g., Vizcaino*, 290 F.3d at 1050-51 & n.6 (upholding a fee

5  award which reflected a lodestar multiplier of 3.65 and noting that multipliers typically range

6  from 1.0 to 4.0); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir.

7  2005) (approving 3.5 multiplier and citing case noting that "multipliers of between 3 and 4.5

8  have become common"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148

9  F.3d 283, 341 (3d Cir. 1998) ("[m]ultiples ranging from one to four are frequently awarded in

10  common fund cases when the lodestar method is applied" (internal quotation omitted)).  Thus,

11  the lodestar multiple is well within the range normally upheld in this and other Circuits.

12       And <u>third,</u> Lead Plaintiff supports Lead Counsel's fee request after considering both the

13  percentage requested and the lodestar multiplier it represents.  Joint Decl. ¶ 12.[8]

14       In addition to seeking an award of attorneys' fees, Lead Counsel also seek Court approval

15  of their request for $37,885.46 for unreimbursed costs and expenses incurred by them.  The

16  Notice and Summary Notice stated that Lead Counsel would apply for reimbursement of

17  expenses in an amount not to exceed $40,000.00.  The expenses incurred by Lead Counsel

18  include the proportional cost of Lead Counsel's valuation expert, CDG, as well as other

19  unreimbursed costs incurred in the Litigation such as expenses for on-line legal research, out-of-

20  town travel, photocopying, postage/express mail, and telephone/facsimile costs.  *See* Joint Decl.

21  ¶ 11 and Exhibit C thereto.

22

23  [8]    In considering the 1.42% fee request for the Settlement that Lead Plaintiff reached with
   Andersen in the *WorldCom* case, Judge Cote found the fee request to be fair and reasonable to

24  the *WorldCom* class, and awarded the fee sought by Lead Counsel with the Lead Plaintiff's
   approval.  *See* Joint Decl. Exhibit B.

25

1    Pursuant to Rule 23(h)(1) of the Federal Rules of Civil Procedure, the Court may order

2    that counsel be reimbursed for expenses incurred in the prosecution of an action.  The Court's

3    analysis as to whether an attorney's expenses are reimbursable typically turns on a determination

4    as to whether similar expenses are typically billed by attorneys.  *See Harris v. Marhoefer*, 24

5    F.3d 16, 19 (9th Cir. 1994) (allowing recovery of expenses that "'would normally be charged to

6    a fee paying client'").

7    The categories of expenses for which reimbursement is sought are consistent with costs

8    normally billed to clients by attorneys.  *See, e.g., In re Immune Response Sec. Litig.*, 497 F.

9    Supp. 2d 1166, 1177 (S.D. Cal. 2007) (awarding reimbursement for "1) meals, hotels, and

10   transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and

11   overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and

12   investigators; and 9) mediation fees").

13   **V.    CONCLUSION**

14   For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant

15   final approval of the proposed Settlement and grant Lead Counsel's request for an award of

16   attorneys' fees and reimbursement of expenses.

1    DATED:  January 4, 2013                 BARRACK, RODOS & BACINE
                                             LEONARD BARRACK
2                                            JEFFREY W. GOLAN
                                             CHAD CARDER
                                             3300 Two Commerce Square
3                                            2001 Market Street
                                             Philadelphia, PA  19103
4
                                             BARRACK, RODOS & BACINE
5                                            STEPHEN R. BASSER
                                             SAMUEL M. WARD
6

7                                            _____
                                                  STEPHEN R. BASSER
8
                                             600 West Broadway, Suite 900
9                                            San Diego, CA  92101

10                                           BERNSTEIN LITOWITZ
                                                BERGER & GROSSMANN LLP
11                                           MAX W. BERGER
                                             JOHN C. BROWNE
12                                           ROCHELLE FEDER HANSEN
                                             1285 Avenue of the Americas
13                                           New York, NY  10019

                                             BERNSTEIN LITOWITZ
14                                              BERGER & GROSSMANN LLP

15                                           _____
16                                                 DAVID R. STICKNEY

17                                           TIMOTHY A. DeLANGE
                                             12481 High Bluff Drive, Suite 300
18                                           San Diego, CA  92130

19                                           *Attorneys  for  Lead  Plaintiff  Thomas  P.
                                             DiNapoli,  Comptroller  of  the  State  of  New
20                                           York,  as  Administrative  Head  of  the  New  York
                                             State  and  Local  Retirement  Systems  and  as
21                                           Trustee  of  the  New  York  State  Common
                                             Retirement  Fund,  and  Co-Lead  Counsel  for  the
                                             Class*
22

23

24

25   NOT. OF MOT., MOT. & MEMO OF LAW                                    -16-
     Master File No: C99-20743 RMW-PVT

**CERTIFICATE OF SERVICE**

*In re McKESSON HBOC, INC. SECURITIES LITIGATION*
Master File No.: C99-20743 RMW-PVT

I, the undersigned, declare as follows:

That I am employed in the County of San Diego, State of California; I am over the age of eighteen years, and not a party to or interest in the within action; my business address is 12481 High Bluff Drive, Suite 300, San Diego, California 92130, and that on January 4, 2013, I served:

**LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH ARTHUR ANDERSEN LLP OF CONTINGENT PAYMENT CLAIM, AND IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

and

**JOINT DECLARATION OF JEFFREY W. GOLAN AND JOHN C. BROWNE IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT WITH ARTHUR ANDERSEN LLP OF CONTINGENT PAYMENT CLAIM, AND IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

by depositing true copies thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the party listed on the attached Service List.

That there is a regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of January, 2013, at San Diego, California.

_Kaye a Martin_
KAYE A. MARTIN

CERTIFICATE OF SERVICE
Master File No.: C99-20743 RMW-PVT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>SERVICE LIST</u>

Scott Vick
Vick Law Group, APC
800 West 6th Street, Suite 1220
Los Angeles, CA 90017
Tel: (213) 784-6225
Fax: (213) 784-6226

*Attorneys for Defendant Arthur Andersen LLP*

CERTIFICATE OF SERVICE
Master File No.: C99-20743 RMW-PVT